NATIONAL MOBILIZATION COMMIT-TEE TO END The WAR IN VIET NAM et al., Plaintiffs-Appellants,

v.

Thomas A. FORAN et al., Defendants-Appellees.

No. 17274.

United States Court of Appeals Seventh Circuit.

· May 27, 1969.

---

Stanley A. Bass, Chicago, Ill., for appellants.

Thomas A. Foran, U. S. Atty., Chicago, Ill., Morton Hollander, Chief, Appellate Section, Robert V. Zener, Atty., Dept. of Justice, Washington, D. C., Edwin L. Weisl, Jr., Asst. Atty. Gen., for appellees.

Before FAIRCHILD and CUMMINGS, Circuit Judges, and HOLDER, District Judge.[1]

CUMMINGS, Circuit Judge.

Five named individuals and the National Mobilization Committee to End the War in Viet Nam instituted a class action on behalf of themselves and all other organizations and individuals similarly situated seeking a declaratory judgment that the 1968 Civil Disorders and Riot provisions of the Criminal Code (18 U.S.C. §§ 231, 232, 2101 and 2102) are unconstitutional on their face and as applied. Plaintiffs also sought to enjoin the defendants from presenting evidence to a grand jury for the purpose of indicting them. Pursuant to a thoughtful

1. Judge Holder is sitting by designation from the Southern District of Indiana.

memorandum opinion, reported in 297 F.Supp. 1, the district judge refused to convene a three-judge court under Sections 2282 and 2284 of the Judicial Code (28 U.S.C. §§ 2282 and 2284) and granted the Government's motion to dismiss the complaint on the ground that the constitutional questions presented were "wholly insubstantial." In connection with their activities during the course of the August 1968 Democratic Convention, the individual plaintiffs and others were subsequently indicted under the challenged statutes, and their trial is presently scheduled to commence before another district judge some time after his September 9, 1969, rulings on pretrial motions. Agreeing that a three-judge district court need not be convened, we affirm.

Section 2282 of the Judicial Code provides that an injunction restraining enforcement of an Act of Congress, on grounds of unconstitutionality, shall not be granted unless the application is heard by a three-judge district court.[2] This provision has been interpreted as not requiring consideration by such a court if the constitutional questions are "plainly insubstantial." Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed.2d 152; Schneider v. Rusk, 372 U.S. 224, 225, 83 S.Ct. 621, 9 L.Ed.2d 695 (per curiam).

Rather out of sequence, the Government first argues that it was unnecessary to convene a three-judge district court, on the ground that the complaint does not allege a basis for equitable jurisdiction in that the constitutional questions raised by plaintiffs may be determined in their criminal prosecution. But it is well settled that when application has been made for a statutory three-judge court and a substantial constitutional question is presented, the single judge's function is limited to the determination "whether the complaint at least formally alleges a basis for equitable relief." Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794. This complaint of course so alleges, so that if a substantial constitutional question were presented it would be for a three-judge court to determine "the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." Zwickler v. Koota, 389 U.S. 241, 254, 88 S.Ct. 391, 399, 19 L.Ed.2d 444.[3] In view of our conclusion that no substantial constitutional questions are presented by this complaint, there is no necessity for considering whether injunctive relief would be appropriate.

The five individual plaintiffs and three other individuals were indicted for conspiring to teach the "use, application, and making of incendiary devices," intending that they be unlawfully used in furtherance of civil disorders, in violation of Section 231(a) (1) of the Crimi-

---

2. Under the aegis of Professor Richard H. Field, Judicial Code revisions proposed by the American Law Institute and being considered by the Judicial Conference of the United States would dispense with the necessity of convening three-judge district courts to pass upon the constitutionality of Acts of Congress (46 F.R.D. 141, 154 (1969)).

3. In Utica Mutual Insurance Co. v. Vincent, 375 F.2d 129, 134, note 7 (2d Cir. 1967), certiorari denied, 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 102, Judge Friendly indicated that a single judge should be able to dismiss a complaint brought under Section 2282 of the Judi-

cial Code for inability to grant relief "even if the constitutional claim were well founded." This view was also espoused in Note, "The Three-Judge District Courts: Scope and Procedure Under Section 2281," 77 Harv.L.Rev. 299, 309–310 (1963), but seems foreclosed on the present state of the law by the *Idlewild Liquor* and *Zwickler* decisions. Professor Currie also considers that a single judge in a case involving a non-frivolous constitutional question may not deny equitable relief because of the adequacy of a legal remedy. Currie, "The Three-Judge District Court in Constitutional Litigation," 32 U.Chi.L.Rev. 1, 25–26 (1964).

nal Code.[4] Non-plaintiff indictees Froines and Weiner were also charged with that substantive offense. All individual plaintiffs and three others were also charged with conspiring to commit acts to obstruct firemen and law enforcement officers "lawfully engaged in the lawful performance of their official duties", in violation of Section 231(a) (3) of the Criminal Code.[5]

■ At the oral argument, the plaintiffs did not attack the constitutionality of these Civil Disorders provisions of the Criminal Code. Their brief does not attack the constitutionality of Section 231(a) (3) or Section 232, the definition provision. Their brief does assert that the phrase "technique capable of causing injury or death to persons" in Section 231(a) (1) includes techniques of self-defense or sporting activities and then argues that "the requirement that an instructor or teacher know whether his pupils will use their skills unlawfully or in a 'civil disorder which may in any way' interfere with interstate commerce is certainly too broad and vague." But this ignores the "knowing, or having reason to know or intending" language of the statute. The requirement of intent of course "narrows the scope of the enactment by exempting innocent or inadvertent conduct from its proscription." Landry v. Daley, 280 F.Supp. 938, 939 (N.D.Ill.1968) (three-judge district

court), probable jurisdiction noted, 393 U.S. 974, 89 S.Ct. 442, 21 L.Ed.2d 436. In sum, we cannot say that the attack on Section 231(a) (1) involves a substantial constitutional question.[6]

■■ The plaintiffs appear to have conceded the constitutionality of Section 231(a) (3), for it was not attacked in their brief or oral argument. It is true that Section 231(a) (3) does not specifically refer to intent, but it only applies to a person who "commits or attempts to commit any act to obstruct, impede, or interfere" with firemen or law enforcement officers. Under such phraseology, it will not be presumed that Congress intended strict liability for inadvertent or accidental occurrences where, as here, the crime is grounded on the common law. Morissette v. United States, 342 U.S. 246, 262–263, 72 S.Ct. 240, 96 L.Ed. 288. Under Section 231(a) (3), it was unnecessary for Congress to require that offenders know the official capacity of those persons whose activities they intended to obstruct, impede, or interfere with, so long as such persons were lawfully engaged in the lawful performance of their official duties. United States v. Lombardozzi, 335 F.2d 414, 415–416, 10 A.L.R.2d 826 (2d Cir.1964), certiorari denied, 379 U.S. 914, 85 S.Ct. 261, 13 L. Ed.2d 185;[7] cf. United States v. Miller, 379 F.2d 483, 487 (7th Cir.1967), certio-

---

4. Section 231(a) (1) provides:
   "Whoever teaches or demonstrates to any other person the use, application, or making of any firearm or explosive or incendiary device, or technique capable of causing injury or death to persons, knowing or having reason to know or intending that the same will be unlawfully employed for use in, or in furtherance of, a civil disorder which may in any way or degree obstruct, delay, or adversely affect commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function;"

5. Section 231(a) (3) provides:
   "Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in

the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function—"

6. Section 231(a) (2) has not been assailed in plaintiffs' brief or oral argument.

7. The *Lombardozzi* rule has been followed in United States v. Wallace, 368 F.2d 537 (4th Cir. 1966), certiorari denied, 386 U.S. 976, 87 S.Ct. 1169, 18 L.Ed.2d 136; McEwen v. United States, 390 F.2d 47 (9th Cir. 1968), certiorari denied, 392 U.S. 940, 88 S.Ct. 2319, 20 L.Ed.2d 1400, and Pipes v. United States, 399 F.2d 471 (5th Cir. 1968).

rari denied, 389 U.S. 930, 88 S.Ct. 291, 19 L.Ed.2d 281.

■ Section 231(a) (3) is markedly dissimilar from the former Resisting or Interfering Ordinance invalidated in Landry v. Daley, 280 F.Supp. 968, 972, 973 (N.D.Ill.1968), appeal dismissed, 410 F.2d 551 (7th Cir.1969). That ordinance involved a broad prohibition of possibly innocent acts and also lacked the narrowing phraseology "lawfully engaged in the lawful performance of his official duties." *Landry* does not persuade us that any substantial constitutional question is presented by Section 231(a) (3).

■ The indictment also charges that the five individual plaintiffs and three others conspired to travel in interstate commerce and use interstate facilities with the intent (1) "to incite, organize, promote, encourage, participate in, and carry on a riot"; (2) to commit acts of violence in furtherance of a riot; (3) to aid and abet persons in such activities; and (4) to perform related overt acts, all in violation of the Riot provisions of the Criminal Code (18 U.S.C. §§ 2101 and 2102)[8]. The five plaintiffs and Bobby Seale were also charged with substantive violations of those provisions. Raising many hypothetical situations, plaintiffs have launched a broadside attack on the enactment. It is a truism that statutes should be narrowly construed in order to sustain their constitutionality (Cameron v. Johnson, 390 U.S. 611, 615–617, 88 S.Ct. 1335, 20 L.Ed.2d 182; United States v. Woodard, 376 F. 2d 136, 144 (7th Cir.1967) (concurring opinion)), unless the narrowing construction is unforeseeable or leaves the law excessively sweeping. Gregory v. City of Chicago, 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134.

The district court held that the First Amendment does not protect rioting and incitement to riot, observing that these riot provisions "deal only with the abuse of First Amendment rights." The statute expressly excludes oral or written advocacy of ideas or expressions of belief not involving violence (18 U.S.C. § 2102(b), Appendix, infra).

■ Given a normal and natural construction, much less a narrow interpretation, it is our conclusion that the Riot provisions are not such an encroachment on free speech nor so vague and indefinite as to present a substantial constitutional question. That is all we are to determine under Section 2182 of the Judicial Code, and therefore we need not and do not consider whether the Riot statute might possibly be misapplied.

Even the plaintiffs have conceded that under the definition of riot in Section 2102(a) of the Criminal Code, it is not difficult to determine whether a riot has occurred. Instead, they complain that mere presence in a crowd, some of whom might be performing acts of violence, could be considered participating in a riot. A similar argument was rejected in Cole v. State of Arkansas, 338 U.S. 345, 70 S.Ct. 172, 94 L.Ed. 155, with respect to an Arkansas statute prohibiting certain unlawful assemblies. Since the Arkansas statute was upheld even though it did not specifically require intent, it follows that this federal statute, with its express intent requirement, is not an unwarranted abridgment of free speech or assembly or fatally indefinite. Plaintiffs' arguments based on guilt by association, loss of control over a theretofore peaceful assembly, and strict liability for the acts of anyone joining an intended peaceful demonstration simply fail to take account of the language of the statute. The statute does interdict riot-connected overt acts, but only if the prescribed intent is present when the interstate travel or use of interstate facilities occurs. Thus the intent to engage in one of the prohibited overt acts is a personal prerequisite to punishment under this provison and necessarily renders any challenge based on innocent intent or unexpected result wide of the mark.

---

8. These provisions are reproduced in the Appendix to this opinion.

■ Statutes are not unconstitutional just because there are marginal cases in which it is difficult to draw the line. The Constitution only requires the statutory language to give a "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." United States v. Petrillo, 332 U.S. 1, 7–8, 67 S. Ct. 1538, 1542, 91 L.Ed. 1877. That standard has been met in these Riot provisions. Moreover, the federal government has a strong interest in preventing violence to persons and injury to their property, and when clear and present danger of riot appears, the power of Congress to punish is obvious. Cf. Cantwell v. State of Connecticut, 310 U.S. 296, 308, 60 S.Ct. 900, 84 L.Ed. 1213. The definition of riot as used in Section 2102(a) of the Criminal Code is carefully limited to apply to such situations (see Appendix, *infra*), and Section 2101 does not proscribe the peaceful exercise of the rights of free speech and assembly. As noted in Gregory v. City of Chicago, 394 U.S. 111, 118, 89 S.Ct. 946, 22 L.Ed.2d 134, (concurring opinion) narrowly drawn statutes regulating the conduct of demonstrators are not impossible to draft, and plaintiffs have not sufficiently shown that these Riot provisions are over-broad.

Our conclusion is that the plaintiffs' attack upon these statutes does not present a substantial constitutional question requiring the convening of a three-judge district court.

Affirmed.

## APPENDIX

18 U.S.C. § 2101 provides:

"(a) (1) Whoever travels in interstate or foreign commerce or uses any facility of interstate or foreign commerce, including, but not limited to, the mail, telegraph, telephone, radio, or television, with intent—

(A) to incite a riot; or

(B) to organize, promote, encourage, participate in, or carry on a riot; or

(C) to commit any act of violence in furtherance of a riot; or

(D) to aid or abet any person in inciting or participating in or carrying on a riot or committing any act of violence in furtherance of a riot;

and who either during the course of any such travel or use or thereafter performs or attempts to perform any other overt act for any purpose specified in subparagraph (A), (B), (C), or (D) of this paragraph—

"Shall be fined not more than $10,000, or imprisoned not more than five years, or both.

"(b) In any prosecution under this section, proof that a defendant engaged or attempted to engage in one or more of the overt acts described in subparagraph (A), (B), (C), or (D) of paragraph (1) of subsection (a) and (1) has traveled in interstate or foreign commerce, or (2) has use of or used any facility of interstate or foreign commerce, including but not limited to, mail, telegraph, telephone, radio, or television, to communicate with or broadcast to any person or group of persons prior to such overt acts, such travel or use shall be admissible proof to establish that such defendant traveled in or used such facility of interstate for foreign commerce.

"(c) A judgment of conviction or acquittal on the merits under the laws of any State shall be a bar to any prosecution hereunder for the same act or acts.

"(d) Whenever, in the opinion of the Attorney General or of the appropriate officer of the Department of Justice charged by law or under the instructions of the Attorney General with authority to act, any person shall have violated this chapter, the Department shall proceed as speedily as possible with a prosecution of such person hereunder and with any appeal which may lie from any decision adverse to the Government resulting from such prosecution; or in the alternative shall report in writing, to the respective Houses of the Congress, the Department's reason for not so proceeding.

**940**

"(e) Nothing contained in this section shall be construed to make it unlawful for any person to travel in, or use any facility of, interstate or foreign commerce for the purpose of pursuing the legitimate objectives of organized labor, through orderly and lawful means.

"(f) Nothing in this section shall be construed as indicating an intent on the part of Congress to prevent any State, any possession or Commonwealth of the United States, or the District of Columbia, from exercising jurisdiction over any offense over which it would have jurisdiction in the absence of this section; nor shall anything in this section be construed as depriving State and local law enforcement authorities of responsibility for prosecuting acts that may be violations of this section and that are violations of State and local law."

18 U.S.C. § 2102 provides:

"(a) As used in this chapter, the term 'riot' means a public disturbance involving (1) an act or acts of violence by one or more persons part of an assemblage of three or more persons, which act or acts shall constitute a clear and present danger of, or shall result in, damage or injury to the property of any other person or to the person of any other individual or (2) a threat or threats of the commission of an act or acts of violence by one or more persons part of an assemblage of three or more persons having, individually or collectively, the ability of immediate execution of such threat or threats, where the performance of the threatened act or acts of violence would constitute a clear and present danger of, or would result in, damage or injury to the property of any other person or to the person of any other individual.

"(b) As used in this chapter, the term 'to incite a riot', or 'to organize, promote, encourage, participate in, or carry on a riot', includes, but is not limited to, urging or instigating other persons to riot, but shall not be deemed to mean the mere oral or written (1) advocacy of ideas or (2) expression of belief, not involving advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts."