Emmitt J. DOUGLAS and Jerry Johnson, Plaintiffs,

v.

Sargent PITCHER, Jr., District Attorney, Parish of East Baton Rouge, Defendant.

Civ. A. No. 69–177.

United States District Court,
E. D. Louisiana,
Baton Rouge Division.

Nov. 24, 1970.

Murphy W. Bell, Baton Rouge, La., Alfred E. Mitchell, Plaquemine, La., Jack Greenberg, Eric Schnapper, New York City, for plaintiffs.

Ralph L. Roy, Asst. Dist. Atty., Parish of East Baton Rouge, Baton Rouge, La., for defendant.

Before AINSWORTH, Circuit Judge, WEST and COMISKEY, District Judges.

WEST, District Judge:

During the summer of 1969 one James Oliney, a Negro youth, was shot and killed by a white policeman in Baton Rouge, Louisiana. According to the policeman, Oliney was suspected of burglary and an attempt was made to arrest him. Before the arrest could be completed, according to the policeman, Oliney attempted to attack the officer with a knife in his hand and the shooting which proved fatal to Oliney followed. Regardless of the reasonableness or unreasonableness of the actions involved, and regardless of whether or not the shooting occurred as related by the policeman, the incident aroused certain members of the Negro citizenry of Baton Rouge and a large protest march ensued. The march culminated in a mass meeting at the courthouse where several members of the Negro race, including the plaintiffs herein, Emmitt J. Douglas and Jerry Johnson, made speeches to the gathering. Following the meeting at the courthouse, emotions were running so high and the tension was apparently so great that the Mayor of Baton Rouge felt it necessary to declare a civil emergency, order a curfew, and call out the National Guard. This was done. But in spite of these precautions, disorders, including damage by fire to property and injuries to persons, allegedly occurred. Thereafter, plaintiffs, Emmitt J. Douglas and Jerry Johnson, were indicted by a State grand jury and charged with violation of Act No. 176 of the 1969 Regular Session of the Louisiana Legislature, LSA–R.S. 14:329.1 et seq., making it a crime to incite to riot. Plaintiffs filed the present suit in this Court asking that a statutory three judge court declare this State statute unconstitutional on the grounds that it is "overly broad" and "vague," creating a "chilling effect" on plaintiffs' exercise of their First Amendment rights. After considering plaintiffs' complaint, the Court concluded that a substantial constitutional question was involved and therefore a statutory three judge court was convened in accordance with the provisions of 28 U.S.C.A. § 2281, and an order staying the State Court prosecution of plaintiffs was issued pending the outcome of this case. Now, after hearing the evidence and after careful consideration of the briefs and arguments of counsel, this Court concludes that Act No. 176 of the 1969 Regular Session of the Louisiana Legislature is not unconstitutional and that plaintiffs' request for an injunction prohibiting the pending State Court criminal proceedings must be denied.

The contested sections of Act 176 of 1969 provide as follows:

LSA–R.S. 14:329.1

*"Riot*

"A. A riot is a public disturbance involving an assemblage of three or more persons acting together or in concert which by tumultuous and violent conduct, or the imminent threat of tumultuous and violent conduct, results in injury or damage to persons or property or creates a clear and present danger of injury or damage to persons or property."

LSA–R.S. 14:329.2

*"Inciting to riot*

"Inciting to riot is the endeavor by any person to incite or procure any other person to create or participate in a riot."

LSA–R.S. 14:329.5

*"Prohibition of interference with educational process; certain activities excepted*

\* \* \* \* \* \*

"D. Nothing contained in R.S. 14:329.1–14:329.8 shall apply to a bona fide legitimate labor organization or to any of its legal activities such as lawful picketing, lawful assembly or concerted activity in the interest of its members for the purpose of accomplishing or securing more favorable wage standards, hours of employment or working conditions."

LSA–R.S. 14:329.7

*"Punishment*

"A. Whoever willfully is the offender or participates in a riot, or is guilty of inciting a riot, or who fails to comply with a lawful command to disperse, or who is guilty of wrongful use of public property, or violates any other provision hereof shall be fined not more than five hundred dollars or be imprisoned not more than six months, or both.

"B. Where as a result of any willful violation of the provisions of R.S. 14:329.1–14:329.8 there is any serious bodily injury or any property damage in excess of five thousand dollars, such offender shall be imprisoned at hard labor for not more than five years.

"C. Where, as a result of any willful violation of the provisions of R.S. 14:329.1–14:329.8, the death of any person occurs, such offender shall be imprisoned at hard labor for not to exceed twenty-one years."

The only question here involved is whether or not this statute, whose professed purpose is to maintain law and order by providing for the punishment of those who incite to riot and thereby cause damage to persons or property, is so vague and overly broad as to do violence to First Amendment rights of freedom of speech, assembly and expression. We think that it is not. No one would seriously contend that actual participation in a riot is constitutionally protected behavior. If damage results from a riot and it is determinable who actually caused the damage, it would certainly be appropriate to charge and try that person for the offense. But where no such *direct* connection between the participation in the riot and the damage resulting from the riot is determinable, we have the task of balancing constitutionally protected First Amendment rights against the rights of society in general. We must here try to balance the possibly conflicting inferences contained in the statute in question with those inferences that can possibly be drawn from the First Amendment. It is possible to conclude that under this statute, one may be charged in a criminal prosecution for behavior which may be linked with the riot, no matter how remote. On the other hand, it is possible to infer from the First Amendment that one may never be held responsible when he merely expresses an idea, no matter how clearly related that behavior might be to the damage suffered. Obviously, both of these inferences must be subject to reasonable limitations in order to balance the right of free expression against the right of society to be protected against damage to their person or property.

The plaintiffs here claim that they were merely attempting to effect change in police procedures through peaceful and nonviolent means and that their activities were within the protective shield of the First Amendment. The State of Louisiana, on the other hand, says that the plaintiffs' actions were in violation of its Anti-Riot Statute and that that statute is a constitutionally permissible limitation on First Amendment freedoms.

That some restrictions on First Amendment freedoms are sanctioned in the law was clearly evidenced by the United States Supreme Court when it said in Cox v. State of Louisiana, 379 U.S. 559, 574, 85 S.Ct. 476, 485, 13 L. Ed.2d 487 (1965):

"Nothing we have said here or in No. 24, ante, is to be interpreted as sanctioning *riotous conduct in any form or* demonstrations, however peaceful their conduct or commendable their motives, which conflict with properly drawn statutes and ordinances designed to promote law and order, protect the community against disorder, regulate traffic, safeguard legitimate interests in private and public property, or protect the administration of justice and other essential governmental functions."

■ The question now before us is whether or not the statute in question

falls within the ambit of the "properly drawn statutes" referred to in *Cox*. It is obvious that the purpose of the act in question is to avoid riots and other unlawful disorders, and it is equally clear that such a purpose is a legitimate state interest. See National Mobilization Committee to End War in Vietnam v. Foran, 411 F.2d 934 (CA 7, 1969), and In Re Shead, 302 F. Supp. 560 (N.D. Cal.1969).

The Congress of the United States enacted an Anti-Riot Statute, 18 U.S.C.A. § 2101, which is quite similar to the State act here in question, and that statute has been held to be constitutional. See National Mobilization Committee to End War in Vietnam v. Foran, supra. Some guidelines by which to determine the constitutionality of such anti-riot statutes were enunciated by the United States Supreme Court, subsequent to the Seventh Circuit holding in *Foran*, in the case of Brandenburg v. Ohio, 395 U.S. 444, 447–448, 89 S.Ct. 1827, 1829–1830, 23 L.Ed.2d 430 (1969), when it said:

> "[T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action. * * * '[T]he mere abstract teaching * * * of the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action and steeling it to such action.' * * * A statute which fails to draw this distinction impermissibly intrudes upon the freedoms guaranteed by the First and Fourteenth Amendments."

Thereafter, in In Re Shead, supra, the Court took into consideration these guidelines in holding the Federal Anti-Riot Statute constitutional.

Now, having accepted the views expressed in *Foran* and in In Re Shead, this Court must consider the question of whether or not the variations in the statute before us from the provisions of the federal act affect, in any way, its constitutionality.

■ But before proceeding with a discussion of the specific provisions of the statute under consideration, it would be well to distinguish between "vagueness" and "overbreadth." We think the distinction was well stated in Amsterdam, The Void-For-Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67 (1960), when it said that overbreadth is a regulation of A and B when regulation of B is forbidden, and vagueness is an otherwise valid regulation of A but in terms so uncertain that it is impossible to tell whether a fact situation comes under A or B, even though B might otherwise be subject to constitutional regulation. The vice of overbreadth is that the prohibition of the statute includes behavior which is protected by the Constitution, and the vice of vagueness is that the statute does not give the public or law enforcement officials adequate guidance in distinguishing between lawful and unlawful conduct.

The plaintiffs contend that Sections 2, 3, and 8 of the Louisiana Act are "overly broad," and that Section 6(D) is defective in that it amounts to a denial of equal protection of the law. One of the plaintiffs' engaging arguments centers around the use of the word "involve" in Section 2, which states:

> "A riot is a public disturbance involving an assemblage of three or more persons acting together or in concert which by tumultuous and violent conduct, or the imminent threat of tumultuous and violent conduct, results in injury or damage to persons or property or creates a clear and present danger of injury or damage to persons or property." LSA–R.S. 14:329.1

■ The plaintiffs contend that under this provision "a demonstrator need not personally engage in, support, or desire the violence in order to violate the

statute." A similar argument was made and rejected in Cole v. State of Arkansas, 338 U.S. 345, 70 S.Ct. 172, 94 L.Ed. 155 (1949). The plaintiff in *Cole* contended that a proper interpretation of the statute there in question, which prohibited acting in concert, promoting, encouraging or aiding an assembly near a "labor dispute" required no more than mere presence in the group where unplanned and unconcerted violence was precipitated by another. That statute prohibited:

> " * * * any person acting either by himself, or as a member of any group or organization or acting in concert with one or more other persons, to promote, encourage or aid any such unlawful assemblage. * * * "

But the Court rejected plaintiff's argument because it found that the Trial Court had properly instructed the jury that mere presence, without more, would not justify a finding of guilt. Thus, a statute which *could* have been interpreted broadly, but which was also capable of a more restrictive interpretation, was held not to violate, per se, the First Amendment. This is the general rule. Statutes should be narrowly construed in order to sustain their constitutionality. See Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968); National Mobilization Committee to End War in Vietnam v. Foran, supra. It is only where a narrow construction of a statute is quite unforeseeable or where such a construction would still leave it excessively broad that the statute can be said to be fatally defective on its face for overbreadth. See Gregory v. City of Chicago, 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969); American Power & Light Co. v. Securities & Exchange Commission, 329 U.S. 90, 108, 67 S.Ct. 133, 143, 91 L.Ed. 103 (1946); Texas Employers Ins. Ass'n. v. Felt, 150 F.2d 227, 233 (CA 5–1945); United States v. Bradley, 418 F.2d 688, 691 (CA 4–1969); Arley v. United Pacific Insurance Company, 379 F.2d 183, 188 (CA 9–1967); Gordon v. Shiro, 310 F.Supp. 884, 890 (E.D.La.– 1970).

■■ There has been no case in the Louisiana Courts involving the particular statute here involved and hence, it is impossible to determine what construction would be placed upon that statute by those Courts. But it is certainly foreseeable, and reasonable to assume, that the Louisiana Courts will require that First Amendment rights be protected, and will require the State to prove more than mere presence in order to convict these plaintiffs, or any other persons, under that statute. Given a normal and reasonable interpretation, the statute is neither overly broad nor vague. All that is required to protect a statute from an attack of vagueness is that the statutory language give a "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." United States v. Petrillo, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877 (1947). Although the act in question states that a riot is a "public disturbance," this does not mean that everyone present is subject to penalty. The act limits punishment to those who "willfully" offend or participate. The plaintiffs' arguments that the statute is overly broad and vague are not persuasive.

Plaintiffs next argue that the statute is overly broad because it may be interpreted to prohibit the lawful infliction of injury such as that inflicted in self-defense. There is no merit to this argument. Louisiana law specifically provides for such a contingency. See LSA–R.S. 14:18–22.

■ Next, the plaintiffs contend that section 3 of the act makes illegal "mere advocacy of ideas." They said the proscribed activity "is not limited to advocacy of reasonably specific acts"— that it is too indefinite as to time, and is not limited to circumstances which present a clear and present danger. Section 3 reads as follows:

> "Inciting to riot is the endeavor by any person to incite or procure any

other person to create or participate in a riot." LSA–R.S. 14:329.2.

A comparison between this section and the corresponding section of the federal act, 18 U.S.C.A. § 2102, reveals that the state act does not include the specific protective language found in the federal act. The latter affirmatively makes it clear that the advocacy of ideas is protected while the above quoted section 3 of the Louisiana act does not specifically do so. But the inclusion of such specific protective language is not sacrosanct. The advocacy of ideas is, in fact, protected by the First Amendment, and it is not necessary that an anti-riot statute affirmatively reaffirm that protection in order to maintain its constitutionality. If, in the application of the statute to a specific case, the trial court fails to recognize the constitutional protection of the advocacy of ideas, then it might be held that the statute had been unconstitutionally applied in that particular case. But the failure of the trial court to recognize the First Amendment right to free advocacy of ideas would not make the statute itself unconstitutional. If the statute is not unconstitutional per se, then each case in which it is applied must stand on its own bottom when a determination is made as to the constitutionality of the application of the statute.

It was stated in Emerson, Toward a General Theory of the First Amendment, 115 (1966), that:

"  *   *   *   the essence of a system of freedom of expression lies in the distinction between expression and action. The whole theory rests upon the general proposition that expression must be free and unrestrained, that the state may not seek to achieve other social objectives through control of expression, and that the attainment of such objectives can and must be secured through regulation of action."

But the difficulty with such a distinction between "expression" and "action" is that "all speech is necessarily 'speech plus'. If it is oral it is noise and may interrupt someone else; if it is written, it may be litter." Kalven, The Concept of the Public Forum: Cox v. Louisiana, 1965 Sup.Ct.Rev. 1, 23. The opposite is also true; "actions" may be protected "speech" as in Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1968), when it is essentially communicative or symbolic. Thus, a determination of whether or not, in any given case arising under a statute, such as the one here involved, which is patently constitutional on its face, the "action" or "speech" involved is "action" or "speech" lawfully proscribed by the statute must, of necessity, depend on the factual findings of the trial court. We are dealing, in such cases, not with the question of constitutionality of the statute itself, but rather with the application and interpretation of the statute by the trial court. And the state court has an absolute right to be given the opportunity to place a lawful interpretation on its statutes when such an interpretation is both reasonable and possible as it is in the present case.

"The question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress [or the State] has a right to prevent. It is a question of proximity and degree." Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470 (1919).

And there is no merit to plaintiffs' argument that the statute is illegal because it may require an offender to anticipate reasonably expected subjective reactions of third persons. This contention was disposed of adversely to plaintiffs' contention in Hunter v. Allen, 422 F.2d 1158, 1168 (CA 5–1970), wherein the Court said:

"Appellants' second contention is that the subsections are fatally defective in that they make the subjective

reactions of third persons a necessary element of the crime. The trial court rejected this contention, distinguishing Terminiello v. City of Chicago. We agree. Making criminality turn on the reasonable subjective reactions of third persons to action is not an innovation in the law. *See,* for instance the federal robbery statute (18 U.S.C. § 2113) which uses the words 'by intimidation'—intimidation is nothing more than a subjective state of fear. *See,* also, O'Leary v. Kentucky, Ky., 441 S.W.2d 150, cert. denied 396 U.S. 40, 90 S.Ct. 267, 24 L.Ed.2d 208 (November 17, 1969)."

■ Plaintiffs' next contention is that the act is overly broad because it subjects a violator to varying degrees of punishment according to the amount of damage or personal injury involved. LSA–R.S. 14:329.7. There is no merit to this argument. Such a variation in prescribed punishment is neither uncommon nor illegal.

We find also that the statute is not defectively vague. It thoroughly and clearly informs anyone who reads it of what is proscribed conduct. Since we have concluded that the statute, on its face, does not do violence to the First Amendment rights, other claims of the plaintiffs based upon due process issues of vagueness should properly be urged in the state court. But we note, in passing, that the act in question speaks in terms of "tumultuous and violent conduct." These terms are, we believe, more specific than "a violent and tumultuous manner" which was the wording of the Atlanta ordinance upheld by the Fifth Circuit Court of Appeals in Hunter v. Allen, supra. We also note in passing that the statute speaks in terms of "conduct" rather than in terms of "speech".

■ Lastly, plaintiffs contend that the act in question denies them the equal protection of the law because section 6(D) thereof, LSA–R.S. 14:329.-5(D), excludes labor organizations from its operation. But labor organizations do not have a blanket exclusion under the act. Section 6(D) provides:

"Nothing in this Act shall apply to a bona fide legitimate labor organization or to any of its legal activities such as lawful picketing, lawful assembly or concerted activity in the interest of its members for the purpose of accomplishing or securing more favorable wage standards, hours of employment or working conditions."

Thus, it is only "lawful" activity of the labor unions that is excluded. Certainly members of labor organizations could be prosecuted under this act for "unlawful" activities violative of the act. Such an exclusion of labor organizations insofar as their "lawful activities" is concerned is not uncommon. See 18 U.S.C.A. § 2102(e).

■ Finally, plaintiffs argue that the charges pending against them under the statute in the state court amount to "bad faith prosecution" and that under the doctrine of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), this Court should order the state to dismiss those charges. But the "special circumstances" found by the Supreme Court to be present in *Dombrowski* are not found to be present here. Neither the statute nor the pending prosecution in this case produces the prohibited "chilling effect" on plaintiffs' First Amendment rights. We have already concluded that the prohibitions contained in the statute are clothed with a legitimate state interest, and that on its face, the statute is not constitutionally overbroad or vague. There is nothing before this Court which would justify a holding that "bad faith prosecution" is involved. If, during the trial of the pending criminal cases, the state trial court determines that the statute is being unlawfully applied, it will, of course, be incumbent upon that court to dismiss the prosecution at the proper time. But whether or not there is a misapplication of the statute must be determined after a trial on the merits.

Such a question obviously cannot and should not be determined by this Court in these proceedings. This Court finds that there is ample evidence in the record to rebut the plaintiffs' claim of bad faith prosecution. It is not the function of this Court to determine whether or not the plaintiffs did in fact cause or incite people to riot. The burden is not on the State to prove its case in these proceedings. The burden is on the plaintiffs to prove bad faith. They have failed to do so.

In Cameron v. Johnson, 390 U.S. 611, 618, 88 S.Ct. 1335, 1339, 20 L.Ed.2d 182 (1968), the United States Supreme Court said:

"* * * a federal district court should be slow to act 'where its powers are invoked to interfere by injunction with threatened criminal prosecutions in a state court.' Douglas v. City of Jeannette, 319 U.S. 157, 162, 63 S.Ct. 877, 880, 87 L.Ed. 1324; See Zwickler v. Koota, supra, 389 U.S. [241], at 253 88 S.Ct. [391] at 398 [19 L.Ed.2d 444]. Federal interference with a State's good-faith administration of its criminal laws 'is peculiarly inconsistent with our federal framework' and a showing of 'special circumstances' beyond the injury incidental to every proceeding brought lawfully and in good faith is requisite to a finding of irreparable injury sufficient to justify the extraordinary remedy of an injunction."

Plaintiffs have shown no "special circumstances" in this case which would justify the Court in granting *Dombrowski* type relief.

It is therefore our conclusion that Act 176 of the 1969 Regular Session of the Louisiana Legislature, LSA–R.S. 14:329.1, et seq., is not unconstitutional on its face, and that the State of Louisiana has the right to continue its pending prosecutions of the plaintiffs for alleged violation thereof. The injunctive relief sought by plaintiffs will therefore be denied and judgment will be entered accordingly.