James Rudolph **MURLEY**, Plaintiff,

v.

**Preston C. SMITH, Crawford C. Martin, Henry Wade, Clarence M. Jones, and Frank Dyson, Defendants.**

Civ. A. No. 3–3857–B.

United States District Court,
N. D. Texas,
Dallas Division.

Feb. 9, 1971.

Hughes, J., concurred and filed opinion.

John E. Collins, Mullinax, Wells, Mauzy & Collins, G. William Baab, Dallas Legal Services Project, Dallas, Tex., for plaintiff.

Earl S. Hines and Jay Floyd, Office of Atty. Gen., Austin, Tex., for defendants Preston C. Smith and Crawford C. Martin.

John B. Tolle, Asst. Dist. Atty., Dallas, Tex., for defendants Henry Wade and Clarence M. Jones.

Alex Bickley and Joseph G. Werner, Office of City Atty., Dallas, Tex., for defendant Frank Dyson.

Before INGRAHAM, Circuit Judge, and ESTES and HUGHES, District Judges.

ESTES, District Judge:

In this case, the plaintiff, James Rudolph Murley, challenges Article 472a of the Vernon's Ann.Texas Penal Code [1] which makes it a felony to interfere with a policeman, fireman, doctor, nurse, or ambulance attendant during a riot or civil disturbance. Plaintiff seeks a declaratory judgment that Article 472a is unconstitutional because of vagueness and overbreadth and an injunction preventing defendants from enforcing the statute against him. [2]

The plaintiff was arrested on May 6, 1970, for having interfered with a policeman during a civil disturbance at Lee Park in Dallas on April 12, 1970. He was indicted by the Dallas County Grand Jury for that offense on June 1, 1970. This suit was filed May 20, 1970.

The initial contention of defendants is that we should abstain. We disagree.

The Supreme Court, in Dombrowski v. Pfister, 380 U.S. 479, at 489–490, 85 S. Ct. 1116, at 14 L.Ed.2d 22 (1965) found abstention improper "where * * * statutes are justifiably attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities." In this case, plaintiff contends that the statute on its face appears to prohibit speech and assembly protected by the First Amendment to the Constitution. However, plaintiff is not entitled to injunctive relief in this action, because he has failed to demonstrate the existence of irreparable injury resulting from overbreadth or vagueness of Article 472a of the Texas Penal Code. Even if injunctive relief is not appropriate, it is clear that this Court should not abstain on the question of issuing a declaratory judgment on the constitutionality of the statute.

"For a request for a declaratory judgment that a state statute is overbroad on its face must be considered independently of any request for injunctive relief against the enforcement of that statute. We hold that a federal district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." Zwickler v. Koota, 389 U. S. 241, 254, 88 S.Ct. 391, 399, 19 L. Ed.2d 444 (1967).

This exact point was passed upon in another three-judge case involving a

---

1. Section 1. "Interfere" as that term is used herein shall mean to intervene and thereby obstruct passage or free movement, materially delay, or prohibit, by direct or devious means.

   Section 2. It shall be unlawful for any person to willfully interfere with any fireman, policeman, or other peace officer in the lawful discharge of his duties, or with any doctor, nurse, or ambulance attendant while such persons are in the exercise of functions intended to control, reduce or contain injury to persons or property during a riot, civil disturbance, or other public disaster.

2. Plaintiff filed his complaint under the First, Fifth and Fourteenth Amendments to the United States Constitution. He alleges jurisdiction to be conferred upon the court by 28 U.S.C. §§ 1343, 2281 and 2284 and by 42 U.S.C. §§ 1983 and 1985.

similar Illinois statute, Landry v. Daley (Landry I), 280 F.Supp. 938 (N.D.Ill. 1968):

"Defendants contend that the conduct of the plaintiffs who are facing state prosecution is 'hard core conduct' which would obviously be prohibited under a narrow and clearly constitutional construction of the statutes. Hence, they argue, federal equitable relief is completely unwarranted. But even assuming arguendo that equitable relief is unwarranted, this does not, as *Zwickler* holds, obviate plaintiffs' right to declaratory relief * * * *Zwickler* indicates that under such circumstances a federal court has a duty to adjudicate the federal claims which are before it and to render declaratory relief one way or the other." 280 F.Supp. at 948.

### Overbreadth

Examination into facial constitutionality of the statute will begin with the question of overbreadth.

Landry v. Daley, *supra*, summarized well the conceptual framework for a consideration of overbreadth:

"The concept of overbreadth * * * rests on principles of substantive due process which forbid the prohibition of certain individual freedoms. The primary issue is not reasonable notice or adequate standards, although these issues may be involved. Rather the issue is whether the language of the statute, given its normal meaning, is so broad that its sanctions may apply to conduct protected by the

Constitution. Frequently, the resolution of this issue depends upon whether the statute permits police and other officials to wield unlimited discretionary powers in its enforcement. If the scope of the power permitted these officials is so broad that the exercise of constitutionally protected conduct depends on their own subjective views as to the propriety of the conduct, the statute is unconstitutional." 280 F. Supp. at 951–952.

■ Thus, there are two aspects of overbreadth consideration—whether or not, under the language of the statute, constitutionally protected speech or assembly are made a criminal offense and whether or not the language of the statute gives police unlimited discretion.

■ We must first examine the statute to determine whether pure speech or assembly[3] protected by the Constitution would constitute an offense under it.

It is clear to this Court that the Texas Legislature did not intend for constitutionally protected speech or assembly to be an offense under this statute.[4] The Legislature went to great pains to define the terms used in its statute; and statutes in similar language have been upheld as not violative of protected First Amendment activities. National Mobilization Committee to End War in Viet Nam v. Foran, 411 F.2d 934 (7 Cir. 1969) (federal statute); Landry v. Daley (Landry I), 280 F.Supp. 938 (N.D. Ill.1968) (Illinois statute). But see Landry v. Daley (Landry II), 280 F. Supp. 968 (N.D.Ill.1968).

The crucial provision of Article 472a on the question of overbreadth is Sec-

---

3. Not all forms of pure speech and assembly are protected by the Constitution. Chaplinsky v. State of New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). However, pure speech or assembly is on much firmer ground than speech and assembly intermingled with non-privileged conduct. Compare Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949) with Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965).

4. In this respect, Article 472a is dissimilar from the Chicago city ordinance struck down by the court in Landry v. Daley (Landry II), 280 F.Supp. 968 (N.D.Ill. 1968).

"While the terms 'resist' and 'obstruct' used in the [Illinois] state statute are relatively precise and connote some affirmative physical action, 'interfere' and 'offer or endeavor to do so' are vague and indefinite and could cover innocent interference by inaction or speech." 280 F.Supp. at 973.

tion 1, which defines "interfere" as doing one of the following: (1) "obstruct passage or free movement," (2) "materially delay" or (3) "prohibit, by direct or devious means." Clearly, "obstruct" and "prohibit" go to conduct which cripples government functionaries in the lawful performance of their duties. The question then revolves around whether or not "materially delay" by "devious means" could mean a delay caused by the exercise of speech or assembly protected by the First Amendment.

The emergency clause (permitting suspension of the rules) of the bill which became Article 472a shows that the Legislature was concerned about the protection of the community in times of disruptions and the safety of police. It reads: "Section 6. The urgent need to strengthen law enforcement and to provide a measure of protection to those persons engaged in the protection of life and property during emergency situations, the importance of this legislation and the crowded condition of the calendars create an emergency * * *" Acts of 1969, 61st Legis., p. 1952, ch. 654.

Further, a reasonable reading of "materially delay" by "devious means" would indicate a legislative preoccupation with such things as hidden traps, deception, and obstacles rather than with a prohibition of any form of protected speech.

█ The law is clear that incidental limitations on First Amendment freedoms are justified in the furtherance of a legitimate government interest. The Supreme Court addressed itself to the question in United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968):

"This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. To characterize the quality of the governmental interest which must appear, the Court has employed a variety of descriptive terms: compelling; substantial; subordinating; paramount; cogent; strong. Whatever imprecision inheres in these terms, we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." 391 U.S. at 376–377, 88 S.Ct. at 1678–1679. Accord Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); Landry I, supra, 280 F.Supp. at 959.

The Texas statute does further a substantial state interest and does so in a manner that limits speech and assembly only to the extent necessary in furtherance of the governmental interest in preserving the peace and protecting individual freedom.

Another aspect of overbreadth consideration is whether or not the statute gives police unlimited discretion. This does not appear to be the case, in that Article 472a specifically limits its application to situations when the police officer is "in the lawful discharge of his duties." Thus, if a police officer arrived on the scene of a peaceful assembly and arbitrarily declared it to be a "civil disturbance" so as to bring the statute into play, he would not be lawfully discharging his duties and thus there could be no violation of the statute. Landry I, supra, 280 F.Supp. at 960.

### Vagueness

The conceptual framework for a consideration of vagueness also was well summarized in Landry I:

"The concept of vagueness or indefiniteness rests on the constitutional principle that procedural due process

requires fair notice and proper standards for adjudication. The primary issues involved are whether the provisions of a penal statute are sufficiently definite to give reasonable notice of the prohibited conduct to those who wish to avoid its penalties and to apprise judge and jury of standards for the determination of guilt. If the statute is so obscure that men of common intelligence must necessarily guess at its meaning and differ as to its applicability, it is unconstitutional." *Landry I, supra*, at 951.

■ The most serious challenge to the statute on the grounds of vagueness deals with the word "devious" in Section 1, which defines interference in terms of "direct or devious" means. As indicated previously, this Court does not read "devious" as being so broad as to include protected pure speech or assembly. As we have indicated, this could include such things as hidden traps, deception, and barricades calculated to thwart lawful performance of duty. Though the Legislature might have been more precise in its choice of language, this Court will not rewrite the statute because of this one word.

Another aspect of the vagueness challenge is alleged absence of a specific requirement in the statute that persons interfering with a policeman, fireman, etc., know that the person interfered with is in fact a policeman, fireman, etc. "Due process requires that knowledge and intent be essential elements of a crime." *Landry II, supra*, 280 F.Supp. at 973. The Illinois statute upheld in *Landry I, supra*, 280 F.Supp. at 959, specifically states performed "by one known to the person to be a peace officer." The Texas statute contains no such specific language. However, the Texas statute does contain a requirement that the interference be "willful," and this Court reads into the word "willful" a requirement that the person so interfering know that he is interfering with a person covered by the statute. This will obviate any possible problem relating to plainclothes police or medical personnel in civilian clothing when those persons are not readily identifiable.

### Bad Faith Enforcement

■ Plaintiff has alleged bad faith enforcement which could be a basis for injunctive relief separate from the court's determination of the statute's facial constitutionality. Bad faith enforcement was illustrated by Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), where the Court accepted the plaintiff's allegations that the defendants had invoked and threatened to continue to invoke criminal process without any hope of ultimate success but solely to discourage the plaintiff's exercise of constitutional rights. While this Court agrees that bad faith enforcement under *Dombrowski* is grounds for an injunction, we do not believe there are alleged facts sufficient for such a finding in this case.

### Conclusion

For the reasons stated, Article 472a of the Texas Penal Code is declared constitutional. The guilt or innocence of the plaintiff, Murley, in the state court case is to be determined by the state court in accordance with the interpretation of the statute placed upon it by this Court.

Judgment will be entered in accordance with this opinion.

INGRAHAM, Circuit Judge, concurs.

HUGHES, District Judge (concurring).

I concur in the majority opinion that Article 472a of the Texas Penal Code is constitutional.

The plaintiff contends that the statute is overbroad. Thus the issue is whether the language of the statute given its normal meaning is so broad that its sanction may apply to conduct protected by the constitution. For a determination of this question the statute must be examined to ascertain whether pure speech or assembly—a mere taunting of police or mere presence in a crowd—could constitute an offense under it.

The Texas Legislature was concerned that pure speech or assembly should not be an offense. It carefully defined the term "interfere" in such a manner that a reasonable reading makes physical interference a necessity. Thus an essential prerequisite for prosecution under this statute is physical interference or incitement to commit physical interference. Similar statutes requiring physical interference have been held not overbroad and constitutional by the federal courts.

In the recent case of Landry v. Daley (Landry I) 280 F.Supp. 938 (N.D.Ill. 1968) a three-judge court had before it the Illinois "Resisting Arrest" statute, Ill.Rev.Stat. ch. 38 sec. 31–1 which provided:

> A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity shall be fined * * *.

The Court held the statute constitutional declaring at 959:

> "The gist of the offense is 'resisting' or 'obstructing' the valid acts of a peace officer * * *. These terms are alike in that they imply some physical act or exertion. Given a reasonable and natural construction, these terms do not proscribe mere argument with a policeman about the validity of an arrest or other police action, but proscribe only some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent, or delay the performance of the duties, such as going limp, forcefully resisting arrest, or physically aiding a third party to avoid arrest."

In National Mobilization Committee to End War in Viet Nam v. Foran, 411 F. 2d 934 (7th Cir. 1969) the Court held constitutional the 1968 Civil Disorders and Riot provisions of the Criminal Code (18 U.S.C. §§ 231, 232, 2101 and 2102 which contained a similar provision Sec. 231(a) (3). At 938 the Court said with reference to the construction of statutes:

> "It is a truism that statutes should be narrowly construed in order to sustain their constitutionality."

Crucial on this question is Section 1 of Art. 472a which defines "interfere" as doing one of the following: (1) "obstruct passage or free movement" (2) "materially delay" or (3) "prohibit, by direct or devious means." Clearly "obstruct" and "prohibit" go to physical acts. The remaining question with reference to the definition of "interfere" is whether or not "materially delay * * * by devious means" could mean pure speech or pure assembly.

The emergency clause (permitting suspension of the rules) of the bill which became Article 472a shows that the Legislature was concerned primarily with the physical safety of the police. It reads: "Section 6. The urgent need to strengthen law enforcement and to provide a measure of protection to those persons engaged in the protection of life and property during emergency situations, the importance of this legislation and the crowded condition of the calendars create an emergency * * *" Acts of 1969, 61st Legis., p. 1952, ch. 654.

Further, a reasonable reading of "materially delay * * * by devious means" would indicate a legislative concern with such things as "going limp", "physically aiding a third party to avoid arrest",[1] hidden traps and obstacles rather than with words.

Once it is established that the only time the statute can be applied to speech or assembly is when it is intertwined with physical interference or when speech incites others to physically interfere, the question then becomes whether this type of speech or assembly is constitutionally protected. The law is clear that under such circumstances it is not protected.

---

1. Landry I, 280 F.Supp. at 959.

As stated in United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968):

"A governmental regulation is sufficiently justified \* \* \* if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression, and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

The objective of the Texas statute, the protection of the police, is a substantial state interest, the limitations on speech and assembly are only incidental and "no greater than is essential to the furtherance of that interest."

In all other respects the majority opinion is adopted.