**In re Steve SHEAD, Larry Carter, Fred Crawford and Bobby Lee Rush.**

**Misc. No. 10101.**

United States District Court
N. D. California.

June 16, 1969.

Cecil F. Poole, U. S. Atty., San Francisco, Cal., Guy L. Goodwin, Sp. Atty., Dept. of Justice, Washington, D. C., for United States.

Garry, Dreyfus, McTernan & Brotsky, Allan Brotsky, San Francisco, Cal., for cross-movants.

## MEMORANDUM FOR ORDER

**OLIVER J. CARTER, District Judge.**

This matter is before the Court on a motion by the United States for an order granting immunity for several witnesses who were called to testify before the grand jury for the Northern District of California sitting in San Francisco. The witnesses were subpoenaed to appear and did appear on May 14, 1969, to testify before the grand jury. Questions relating to matters involving interstate travel to organize, promote and encourage riots and teaching and demonstrating the use and making of firearms and explosives were then and there asked of these witnesses. They refused to answer such questions on the ground that the answers they give might tend to incriminate them. The United States Attorney for the Northern District of California has now moved this Court to order the witnesses to answer such questions pursuant to the immunity provisions of 18 U.S.C. § 2514.

In answer to the motion, the witnesses have filed a cross-motion seeking declaratory and injunctive relief against enforcement of 18 U.S.C. §§ 2514 (immunity statute), 2101 (anti-riot statute). Included in the cross-motion is the request that the constitutional attacks against these statutes be determined by a three-judge court pursuant to 28 U.S. C. § 2282.

Before discussing some of the issues raised by the witnesses, the nature of the matter before this Court should be emphasized. This proceeding is the result of a motion by the government to order the witnesses to testify at a grand jury investigation. The constitutional issues presented by the witnesses arise in opposition to the granting of such a motion. Thus, a novel situation is presented in which a three-judge court is being requested to enjoin enforcement of federal laws by persons who are already before the Court with standing to raise as a defense, the issues which form the identical basis for their claim for equitable relief. A similar situation would arise in a criminal prosecution in which the defendant files in the very court which is hearing the matter, a cross-complaint for an injunction against the enforcement of the law under which he is being prosecuted, relying on the principles of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

Movant and cross-movants have supported their motions with arguments making some reference to the problem of "standing to challenge the constitutionality of the statutes herein." This Court has no doubt that the witnesses have standing to challenge the constitutionality of these statutes. The government's motion is based on 18 U.S.C. § 2514, so the constitutionality of this statute is clearly a proper issue before this Court.

As to 18 U.S.C. § 2101, constitutionality is also a proper issue, since this Court would be powerless to order the witnesses to testify if that statute is unconstitutional on its face. The Con-

stitution is silent on the specific point of Congress' power to provide for ordering persons to testify in federal court or before a federal grand jury after being granted immunity. The Constitution does provide, however, that Congress has power "To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." U.S.Const. Art. I, § 8, cl. 18. Thus, Congress has the power to grant immunity coextensive with the privilege against self-incrimination if the purpose for which it is necessary and proper, is one properly within the sphere of federal power. Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1966). If this purpose suffers from constitutional infirmity, the legislation attempting to grant immunity for that purpose must also fall. Compare Brown v. Walker, 161 U.S. 591, 601, 16 S.Ct. 644, 40 L.Ed. 819 (1896). (Discussion of Congress' power to grant amnesty).

In the case before this Court, the applicable portion of 18 U.S.C. § 2514 provides:

"Whenever in the judgment of a United States attorney the * * * evidence of any witness, in any case or proceeding before any grand jury or court of the United States involving any violation of * * * any of the offenses enumerated in section 2516 or any conspiracy to violate * * * any of the offenses enumerated in section 2516 is necessary to the public interest, such United States attorney * * * shall make application to the court that the witness shall be instructed to * * * produce evidence subject to the provisions of this section * * *. No such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence * * *."

The government's application states that the "Grand jury was then and there inquiring into matters involving interstate travel to organize, promote and encourage riots and teaching and demonstrating the use and making of firearms and explosives," when the witnesses refused to testify. Although the government has failed to specify what federal crimes the grand jury was investigating, the application can be interpreted to mean the grand jury was investigating violations of 18 U.S.C. § 2101, which is one of the offenses enumerated in 18 U.S.C. § 2516. If section 2101 is unconstitutional, the purpose for which Congress provided the grant of immunity is void and this Court cannot order the witnesses to testify under a grant of immunity coextensive with the privilege of self-incrimination. Thus, cross-movants are entitled to have the constitutionality of both statutes determined by this Court.

■■■ The Court now turns to the question of whether or not the prayer by cross-movants for injunctive relief may be honored in this case, for purposes of determining whether a three-judge court should be convened under 28 U.S.C. § 2282. It is established that if a complaint seeks an injunction restraining the enforcement, operation or execution of an Act of Congress and the constitutional questions raised are not plainly insubstantial, a three-judge court must be convened. Schneider v. Rusk, 372 U.S. 224, 83 S.Ct. 621, 9 L.Ed.2d 695 (1963). However, the instant case does not involve solely a complaint seeking declaratory and injunctive relief. To the contrary, this matter is presented by cross-motion in a "quasi-criminal" proceeding arising out of a grand jury investigation. See Counselman v. Hitchcock, 142 U.S. 547, 562, 12 S.Ct. 195, 35 L.Ed. 1110 (1892). For this reason, the relief sought is inappropriate. The constitutional issues raised by cross-movants are properly before the Court as defenses to the motion filed by the government. Additional relief by way of a sweeping injunction is outside the prov-

ince of a court sitting in a criminal matter, in the absence of extraordinary circumstances requiring such relief.

█ Since this Court has the power to grant equitable relief, it may be argued that cross-movants should be allowed to have their cross-motion treated as a counterclaim for declaratory and injunctive relief against prosecution under section 2101, and against grand jury investigation aided by section 2514. This procedure is provided for in Fed.R.Civ. P. 13(c). There being no counterpart to Rule 13(c) of the Fed.R.Civ.P. in the Fed.R.Crim.P., this Court is of the opinion that such treatment is impermissible.

Even if this Court were to procedurally accept cross-movants' request for injunctive relief, the Court concludes that such relief is inappropriate in this case. There is no showing here that movants would not, nor can it be assumed that they will not acquiesce in the decision of this Court holding the challenged statutes unconstitutional. See Douglas v. City of Jeannette, 319 U.S. 157, 165, 63 S.Ct. 877, 87 L.Ed. 1324 (1943). No irreparable injury would result to cross-movants by this Court deciding the questions at law without granting equitable relief. There being no basis for equitable relief, a three-judge court is unwarranted. As said in Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U. S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed. 2d 794 (1962):

> "When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a *basis* for equitable relief, and whether the case presented otherwise comes within the requirement of the three-judge statute." [Emphasis added].

█ An additional reason exists why convening a three-judge court would be improper in this case. The cross-movants' constitutional attack on section 2101 was answered by the Court of Appeals for the Seventh Circuit in National Mobilization Committee to End the War in Viet Nam v. Foran, 411 F.2d 934, (7th Cir. May 27, 1969). The attack on section 2514 is controlled by Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956). See also, the full discussions of these issues below. Thus, cross-movants' claim here is plainly insubstantial and fails to meet the requisites for convening a three-judge court. Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed. 2d 762 (1962).

█ It is, therefore, concluded that cross-movants are not entitled to have their claims heard by a three-judge court. This conclusion is reached without any frustration to and with full consideration of the purpose of 28 U.S.C. § 2282, which is to "prevent a single federal judge from being able to paralyze totally the operation of an entire regulatory scheme, either state or federal, by issuance of a broad injunctive order." Kennedy v. Mendoza-Martinez, 372 U.S. 144, 154, 83 S.Ct. 554, 560, 9 L.Ed.2d 644 (1963).

The Court now turns to the claim by cross-movants that 18 U.S.C. § 2101 is unconstitutional. As mentioned before, this Court agrees with and follows National Mobilization Committee to End the War in Viet Nam v. Foran, *supra*, which held section 2101 constitutional. Cross-movants have indicated in their briefs that their situation may require further consideration of their claim. This is accomplished by the following language quoted from page 5 of movants' Answering Memorandum:

> "But these are quite different matters from the instant case, in which cross-movants have been subpoenaed to testify, have not been charged with violation of any statute, where only 'riots' in the abstract appear to be under consideration by the Grand Jury, and where no clear danger, past, present, of future, can be shown to arise from their exercise of constitutional rights of speech, travel, and association."

█ Cross-movants apparently misunderstand the function of the grand jury. The grand jury exists to determine whether cause exists upon which an indictment would properly lie for violation of federal laws. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906). Thus, grand jury investigation of cases in which violations of federal law do not actually exist is highly proper. Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 206–209, 66 S.Ct. 494, 90 L.Ed. 614 (1946). Thus, the fact that this case may involve a grand jury investigation of "riots in the abstract" is no ground for further consideration of the constitutionality of 18 U.S.C. § 2101. Cf. Barenblatt v. United States, 360 U.S. 109, 79 S.Ct. 1081, 3 L.Ed.2d 1115 (1959). See also Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (June 9, 1969).

On June 9, 1969, the Supreme Court decided Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430, affirming the principle that:

> "[T]he constitutional guaranties of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action. * * * [T]he mere abstract teaching * * * of the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action and steeling it to such action. * * * A statute which fails to draw this distinction impermissibly intrudes upon the freedoms guaranteed by the First and Fourteenth Amendments."

This Court feels that Brandenburg may require a further discussion of the constitutionality of 18 U.S.C. § 2101, which provides:

> "(a)(1) Whoever travels in interstate or foreign commerce or uses any facility of interstate or foreign commerce, including, but not limited to, the mail, telegraph, telephone, radio, or television, with intent—
>
> (A) to incite a riot; or
>
> (B) to organize, promote, encourage, participate in, or carry on a riot; or
>
> (C) to commit any act of violence in furtherance of a riot; or
>
> (D) to aid or abet any person in inciting or participating in or carrying on a riot or committing any act of violence in furtherance of a riot;
>
> and who either during the course of any such travel or use or thereafter performs or attempts to perform any other overt act for any purpose specified in subparagraph (A), (B), (C), or (D) of this paragraph—
>
> "Shall be fined not more than $10,000, or imprisoned not more than five years, or both."

In summary, Congress has made it a crime if there is an intent to promote a riot at the time of use of interstate or foreign facilities and at that time or thereafter, the additionally-required overt acts are committed. This intent must be to promote, and the overt acts must be committed for the purpose of promoting, the disturbances defined in 18 U.S.C. § 2102(a), which provides in summary form:

As used in this chapter, the term "riot" means a public disturbance involving:

1) acts of violence which

a) *shall constitute a clear and present danger of* damage or injury to persons or property, or

b) *shall result in* damage or injury to persons or property; or

2) threats of the commission of acts of violence by a person having the ability of immediate execution of such threats where the performance of the threatened act

a) *would constitute a clear and present danger of* damage or injury to person or property, or

b) *would result in* damage or injury to person or property.

Subparagraph (b) of 18 U.S.C. § 2102 provides:

"As used in this chapter, the term 'to incite a riot', or 'to organize, promote, encourage, participate in, or carry on a riot', includes, but is not limited to, urging or instigating other persons to riot, but shall not be deemed to mean the mere oral or written (1) advocacy of ideas or (2) expression of belief, not involving advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts."

Subparagraph (b) does not limit application of section 2101 within constitutional limits, nor does it broaden application beyond such limits. Cross-movants contend that Congress' provision that the Act shall not be deemed to include expression "not involving advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts", necessarily means that Congress intended to include expression that involves advocacy of violence, without further restriction. This interpretation would be directly contrary to the provisions of subparagraph (a) of section 2102. Subparagraph (a) specifically requires the promotion of acts of violence or threats of acts of violence with ability for immediate execution, which "shall result in," or "would result in" or "constitute a clear and present danger of" damage or injury to person or property. If the disturbances promoted or threatened constitute a clear and present danger, the overt acts themselves which are committed for that purpose, necessarily must also constitute a clear and present danger. These phrases sufficiently limit the conduct condemned by 18 U.S.C. section 2101, to "advocacy of the use of force or of law violation where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." See Brandenburg v. Ohio, *supra.*

Congress, by excluding expression not involving advocacy of, assertion of the rightness of, or the right to commit acts of violence, has excluded advocacy which may otherwise "incite a riot" without advocating or asserting rightness of violence. This results in the total exclusion of expression not involving advocacy of violence whether or not the intent and required overt acts fall within the coverage of 18 U.S.C. §§ 2101 (a), 2102(a).

The contention that this exclusion requires an interpretation that "mere advocacy of violence" is made a crime is untenable. Such an interpretation would require that the language actually used by Congress, "shall not be deemed to mean * * * advocacy of ideas * * * *not* involving advocacy of any act of * * * violence", be changed by substituting the phrase "except when" for the term "not". Furthermore, unlike subparagraph (a) of Section 2102, which defines "riot", subparagraph (b) discusses the term "to incite a riot". Subparagraph (b) leaves intact the definition of "riot: as set forth in subparagraph (a). Congress, by merely excluding from coverage all other types of advocacy or expression of ideas, cannot broaden the definition of "riot" as used in the offenses enumerated in section 2101. In order to be convicted under that section, the conduct involved must still meet the additional requirements of an overt act in furtherance of promoting a riot and the specific definition of a "riot" as set forth in subparagraph (a).

It is therefore this Court's conclusion that the foregoing interpretation of the Act is the only reasonable one available. After research of the extensive legislative history of the Civil Rights Act of 1968 within the time permitted, this Court has not found any significant material which would either support or detract from the accuracy of such an interpretation on this particular point. It is therefore this Court's duty to reasonably interpret the statute with what is available. There is no basis for argument by the government that the

Act includes mere advocacy of violence, if it wishes to gain such broad coverage. Similarly, there is no basis for argument by others that the Act includes mere advocacy of violence, in an attack on the constitutionality of the Act on its face. The provisions of the Act are sufficiently restrictive to sustain its validity, at least until indictments, instructions to a jury, or convictions fail to refine the distinction between mere advocacy and incitement to imminent lawless action. See Brandenburg v. Ohio, *supra.* This Court's decision does not involve the more difficult problem of applying the Act to a specific case. This Court only holds that the Congressional Act effectively avoids the infirmities of overbreadth and vagueness. Adequate guidance delineating between lawful and unlawful conduct is given to the public in compliance with the standards of due process of law.

The Court next discusses the constitutionality of 18 U.S.C. § 2514. It is well-settled that the immunity statute would be unconstitutional if it fails to provide for immunity "coextensive with the scope of the privilege against self-incrimination." Murphy v. Waterfront Commission of New York Harbor, 378 U.S. 52, 54, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892). This does not mean that the grant of immunity must provide protection against every harm which may result from the compelled testimony. *E.g.,* Piemonte v. United States, 367 U.S. 556, 559 n. 2, 81 S.Ct. 1720, 6 L.Ed.2d 1028 (1961). It is cross-movants' contention that the scope of the privilege against self-incrimination has recently expanded to a degree which is not met by the grant of immunity under 18 U.S.C. § 2514. In support of this contention, cross-movants rely principally on Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), and Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967). In *Garrity,* the petitioner was criminally convicted by use of testimony obtained at the threat of dismissal from public employment. The Supreme Court held that the testimony so obtained was coerced in violation of the privilege against self-incrimination, thus rendering it inadmissible in the state criminal proceedings in which it was used. In *Spevack,* the Supreme Court held that the disbarment of a lawyer for his refusal to testify was an unconstitutional penalty for the assertion by an individual of his constitutional right to remain silent. These cases do not support the proposition that the scope of the privilege has expanded beyond a privilege which protects one from having to disclose that which may lead to a criminal prosecution. See Malloy v. Hogan, 378 U.S. 1, 10–11, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The basic purposes that lie behind the privilege against self-incrimination still relate to "preserving the integrity of a judicial system in which even the guilty are not to be convicted unless the prosecution 'shoulders the entire load.'" Tehan v. United States ex rel. Shott, 382 U.S. 406, 415, 86 S.Ct. 459, 465, 15 L.Ed.2d 453 (1966). This Court considers controlling the answer given by the Supreme Court to a contention similar to that made by cross-movants:

"[T]he immunity granted need only remove those sanctions which generate the fear justifying invocation of the privilege: 'The interdiction of the 5th Amendment operates only where a witness is asked to incriminate himself,—in other words, to give testimony which may possibly expose him to a criminal charge. But if the criminality has already been taken away, the amendment ceases to apply.' [Citation]. Here, since the Immunity Act protects a witness who is compelled to answer to the extent of his constitutional immunity, *he has of course, when a particular sanction is sought to be imposed against him, the right to claim that it is criminal in nature.*" Ullmann v. United States, 350 U.S. 422, 431, 76 S.Ct. 497, 502, 100 L.Ed. 511 (1956). [Emphasis added].

■ Whether or not the Fifth Amendment requires broader immunity, the provisions of 18 U.S.C. § 2514 are sufficiently broad in its grant of immunity:

"* * * No such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding * * * against him in any court. * * *"

Cross-movants further contend that the last clause in the above-quoted statutory provision limits immunity in criminal proceedings to testimony, as opposed to other evidence which may be compelled. There is no support for this contention. In fact, other immunity statutes with the identical language have been upheld as constitutional. Ullmann v. United States, *supra*; Reina v. United States, 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960).

Cross-movants have also called this Court's attention to Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L. Ed.2d 889 (1968), which held federal wagering tax and registration requirements to be in violation of the Fifth Amendment. It is argued that *Marchetti* "specifically rejected the possibility of protecting the petitioners with a scheme similar to a grant of immunity" in view of the Fifth Amendment. The argument is buttressed with this quotation from page 59, 88 S.Ct. page 708 of *Marchetti*, where the Supreme Court discusses the possibility of a judicial immunity scheme:

"Moreover, the imposition of such [immunity] restrictions would necessarily oblige state prosecuting authorities to establish in each case that their evidence was untainted by any connection with information obtained as a consequence of the wagering taxes; the federal requirements would

thus be protected, only at the cost of hampering, perhaps seriously, enforcement of state prohibitions of gambling."

The Supreme Court in *Marchetti* did not reject the possibility of a Congressional immunity scheme within the federal tax structure. In fact, the Court went on to say, immediately following the above-quoted language:

"We cannot know how Congress would assess the competing demands of the federal treasury and of state gambling prohibitions; we are, however, *entirely certain that the Constitution has entrusted to Congress,* and not to this Court, the task of striking an appropriate balance among such values." Id. at page 60, 88 S.Ct. at page 708 [Emphasis added].

■ Cross-movants' final contention is that they, as Black citizens of the United States and Members of the Black Liberation Movement, are being deprived of their right provided by the Thirteenth Amendment to the United States Constitution to be free of badges and indicia of slavery in that the statutes deprive Black people, as a class, of the national rights of citizenship. Neither the legislative history of the statutes involved here, nor the statutes themselves, nor any other showing made to this Court, support the finding that these Black people are particularly being subjected as a class to any kind of harassment, oppression, or bad faith application of the laws. *E. g.,* S.Rep.No. 721, 90th Cong., 2d Sess. (1968) (Civil Rights Act of 1968), 2 U.S.Code Cong. and Adm.News, p. 1837 (1968); S.Rep. No. 1097, 90th Cong., 2d Sess. (1968) (Omnibus Crime Control and Safe Streets Act of 1968), 2 U.S.Code Cong. and Adm.News, p. 2112 (1968). Therefore, the Court rejects this argument as being unsupportable.

For the foregoing reasons, this Court will grant the government's application for an order pursuant to 18 U.S.C. § 2514.