**UNITED STATES**

**v.**

**Abbott HOFFMAN, also known as Abbie Hoffman.**

**Crim. No. 973-71.**

United States District Court,
District of Columbia.

Nov. 23, 1971.

Joseph J. Tafe, Department of Justice, Washington, D. C., for plaintiff.

Gerald B. Lefcourt, New York City, Philip Hirschkop, Alexandria, Va., for defendant.

## ORDER

JOHN LEWIS SMITH, Jr., District Judge.

On May 13, 1971 the defendant was indicted for violations of 18 U.S.C. §§ 231 (a) (3) and 2101. On June 30, 1971 he moved, pursuant to Rules 16 and 41, F.R. Crim.P., and the Fourth, Fifth and Sixth Amendments to the Constitution, for disclosure of all records of electronic surveillance of any communications to which he was a party or which were conducted at his premises. He also requests such records for any premises in which he had an interest; of any surveillance conducted for the purpose of gathering leads or evidence against him; any such surveillance conducted at a place where he was present; any such surveillance during which he was referred to; any such surveillance in which any party is unidentified; and any such surveillance involving his attorneys.

Defendant also seeks an evidentiary hearing prior to trial to determine whether the government has fully complied with all of his requests, to determine his standing to raise the issue of the legality of such surveillance, and to determine the extent to which such surveillance has tainted the evidence upon which the indictment is based.

In opposition to that motion the government states that Hoffman has never been the subject of direct electronic surveillance but that conversations believed to be his have been overheard during five surveillances conducted without prior judicial approval but authorized by the President to obtain foreign intelligence information or safeguard the national security. The government has, in a sealed exhibit, submitted the records of those five surveillances as they pertain to the defendant and requested that the Court examine those records *in camera*. On July 21, 1971 this motion was extensively argued by counsel.

In Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), the Supreme Court held that the government must disclose to the defendant any conversations participated in by him or occurring on his premises, provided those conversations were overheard during the course of an illegal electronic surveillance. Disclosure is required so that the defendant may determine whether any evidence against him is based on illegal surveillance. Hoffman has standing to object to the use of any of the five surveillances which this Court finds to be illegal because he was a party to the overheard conversations. Alderman v. United States, *supra*. The government contends that disclosure of these surveillance records is not required by *Alderman* because they were not illegal,

in spite of being initiated and conducted without prior warrant. A finding by this Court that the surveillances in this case were lawful would make disclosure and further proceedings unnecessary. Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969).

As Justice Stewart pointed out in his concurring opinion in *Giordano*, *Alderman* did not specify the procedures to be followed by the district court in making the preliminary determination of whether the surveillance violates the Fourth Amendment.

Neither does *Alderman* require an adversary hearing and full disclosure for resolution of every issue raised by an electronic surveillance or give the defendant the right to rummage through government files. Taglianetti v. United States, 394 U.S. 316, 89 S.Ct. 1099, 22 L. Ed.2d 302 (1969). Upon examination, *in camera*, of the documents submitted in the sealed exhibit, the Court deems it appropriate to make the required preliminary determination of whether any of the conversations of the defendant were overheard in violation of his Fourth Amendment rights. An evidentiary hearing is not required to make that determination.

The surveillance records submitted by the government clearly indicate that they were not directed against the defendant nor at his premises. Those five surveillances were expressly authorized by the President, acting through the Attorney General, without judicial approval, and deemed necessary to protect national security.

The government contends that the President has the inherent power to gather intelligence information through electronic surveillance, upon his determination that it is necessary to protect the national security, without securing a prior warrant. Reliance for this authority is grounded upon the presidential power in the field of foreign affairs, a thirty-year history of authorizations by Presidents recognizing the necessity for such surveillance where national defense is involved, and the congressional recognition of that power by the enactment of

18 U.S.C. § 2511(3). It is contended that the power to authorize surveillance deemed necessary to protect national security is closely related to the power to obtain foreign intelligence information.

The government maintains that the protection of national security could not be adequately achieved within the context of a warrant procedure because of the wide range of factors which bear on the decision, the secrecy of some of those factors, and the possibility of leaks. It claims that even without the warrant requirement, the Presidential prerogative is not without restraints. For instance, only the President and his sole delegate, the Attorney General, may exercise the power; the President must apply the strict standard of "national security" involvement; such surveillance is subject to *in camera* judicial review, such as is suggested here; and the President is subject to the will of the electorate if his exercise of the power is not approved by a majority.

The government position in likening the foreign intelligence justification to situations where the President determines that the national security warrants it is especially pertinent in this case where four of the five surveillances were of domestic organizations and were instituted for the express purpose of gaining information regarding the activities of those organizations, obtaining evidence of violations of federal law, or both, and the fifth surveillance was for the purpose of gathering foreign intelligence information which was deemed necessary in the conduct of foreign affairs. This Court must, therefore, determine the legality of both the "foreign" and the "domestic" surveillances.

The government contends that foreign and domestic affairs are inextricably intertwined and that any attempt to legally distinguish the impact of foreign affairs from the matters of internal subversive activities is an exercise in futility. That argument is not compelling, however, after an examination by the Court of the five surveillance authorizations involved in this case. Further, in view of the important individual rights protected by

the Fourth Amendment, any such difficulty in separating foreign and domestic situations should be resolved in favor of interposing the prior warrant requirement. The government has apparently chosen to deal with dissident domestic organizations in the same manner as it does with hostile foreign powers.

The same arguments presented by the government here have recently been considered by several district courts and at least one circuit. United States v. United States District Court for Eastern Dis. of Mich., So.Div., 444 F.2d 651 (6th Cir., 1971), cert. granted, 403 U.S. 930, 91 S. Ct. 2255, 29 L.Ed.2d 708 (1971); United States v. Donghi, Cr. No. 1970–81 (W.D. N.Y., May 14, 1971); United States v. Hilliard, Cr. No. 69–141 (N.D.Cal., May 4, 1971); United States v. Smith, 321 F.Supp. 424 (C.D.Cal., 1971); United States v. O'Neal, Cr. No. KC–CR–1204 (D.C.Kan., September 1, 1970); and United States v. Dellinger, Cr. No. 180 (N.D.Ill., February 20, 1970). All of those cases appear to involve the surveillance of domestic organizations to protect national security rather than the gathering of foreign intelligence information. The clear weight of those authorities is that disclosure is required by *Alderman* where the surveillance was directed at domestic organizations although recognizing that the constitutional limitations which are reasonable and proper when solely domestic subversion is involved may not apply to the conduct of foreign affairs.

The legality of electronic surveillance for the gathering of foreign intelligence information deemed necessary for the conduct of foreign affairs and the protection from espionage and sabotage is still an open question. Giordano v. United States, Id. at 313, 89 S.Ct. 1163 (Stewart, J., concurring); Katz v. United States, 389 U.S. 347, 364, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), (White, J., concurring). *Alderman*, however, would require disclosure even where national security interests are at stake if it is determined that the surveillance was illegal.

The Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510, *et seq.*, recognizes that its provisions or the provisions of the Communications Act of 1934, 47 U.S.C. § 605, are not deemed to limit the constitutional power of the President to gather essential foreign intelligence information and protect against the overthrow of the government by force or other unlawful means. However, the contents of any communications intercepted by authority of the President under those powers may only be received in evidence where such interception is reasonable. 18 U.S.C. § 2511 (3).

There is no constitutional provision authorizing the President to conduct warrantless searches in domestic situations although authorization may impliedly exist where necessary in the conduct of foreign affairs. The government contention that where electronic surveillance has been deemed necessary by the President to safeguard national security there has been a determination of reasonableness would eliminate the warrant requirement of the Fourth Amendment. This prior warrant requirement is subject only to narrow, well-recognized exceptions, Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), even where the facts disclose later that probable cause did exist. Katz v. United States, *Id.* Claims of inherent Presidential powers, where such powers have invaded constitutionally protected individual rights, have been rejected by the Supreme Court. New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952).

United States v. Clay, 430 F.2d 165 (5th Cir. 1970), rev'd on other grounds, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971), involved a strikingly similar situation in that the fifth of five electronic surveillances, records of which the defendant sought to obtain, had been instituted for the purpose of gathering foreign intelligence information. The

fifth log was considered *in camera* after which it was held that the surveillance was lawful, reasonable and necessary to protect the government's interest. The Court balanced the rights of the defendant with the national interest and found that his rights were properly safeguarded by the *in camera* examination of the fifth log. A similar result was rejected, however, where the rights of the defendant were balanced with the national interest in conducting warrantless surveillances in domestic security situations. United States v. Keith, *Id.*

The Court, in *Clay*, also recognized that 18 U.S.C. § 2511(3) is a clear statement by Congress not to limit the prerogative of the President to obtain foreign intelligence information. This issue was presented to the Supreme Court in the application for writ of certiorari. The writ was granted, however, only on the issue of conscientious objector status. 400 U.S. 990, 91 S.Ct. 457, 27 L.Ed.2d 438 (1971).

In *Katz*, the Supreme Court explicitly discarded the property concept in search and seizure cases and held the Fourth Amendment fully applicable to electronic eavesdropping. All of the interceptions involved in this case were made after the decision in *Katz* and that ruling is fully applicable.

Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1284, 6 L.Ed.2d 1081 (1961), have established that any products of a search conducted in violation of the Fourth Amendment shall not be admitted against the defendant at his trial. In Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), the exclusionary rule of *Weeks* was expanded to prohibit the admission of any fruits derived from illegally seized evidence.

■ This Court finds that the defendant's conversations intercepted during the four electronic surveillances conducted on the domestic organizations were intercepted illegally and that *Alderman* mandates their disclosure.

■ This Court also finds that the defendant's conversations intercepted during the fifth electronic surveillance, conducted for the purpose of gaining foreign intelligence information, was not intercepted illegally.

The interceptions of Hoffman's conversations through the four domestic surveillances involve six separate, brief conversations occurring during a period of almost two years, the most recent being at least a month prior to the date of the indictment. It appears to the Court that none of those interceptions are related to the subject matter of that indictment. Those surveillance records, however, may have impeachment value or may relate, in some way not readily apparent, to the evidence presented during the trial of this case. The defendant's contention that the evidence upon which the indictment is based is illegal is without merit. Further, because of the apparently unrelated nature of the interceptions to the subject matter of the indictment, the interest of neither the defendant nor the government would be best served by a pretrial hearing to determine whether the evidence to be presented during the trial has been tainted. The proper course appears to the Court to be one ordering disclosure of the domestic surveillance records to the defendant just prior to trial and under a protective order prohibiting further disclosure.

A determination of the extent of taint, if any, may be appropriate at the conclusion of the trial. Neither Rule 41(e), F.R.Crim.P., nor Battle v. United States, 120 U.S.App.D.C. 221, 345 F.2d 438 (1965), require a pretrial hearing where, as here, the legality of the interceptions has been determined.

Accordingly, it is this 23rd day of November, 1971

Ordered that the records of the five surveillances submitted by the government and examined *in camera* will be sealed by this Court and returned to the Department of Justice to be so retained subject to any further orders of this Court or any other court of competent jurisdiction, and it is further

Ordered that at least two (2) days prior to the trial of this case the government make full disclosure to defendant Hoffman of his conversations overheard during the four electronic surveillances of the domestic organizations herein involved, and it is further

Ordered that the existence, nature and contents of any material disclosed pursuant to this Order shall be made available only to counsel of record for the defendant, and that the existence, nature and contents of any material disclosed pursuant to this Order shall not be revealed to any other person unless pursuant to further order of this Court or any other court of competent jurisdiction and it is further

Ordered that the defendant's other requests be and they hereby are denied.

On Motion to Dismiss Indictment

The defendant was indicted for interstate travel with intent to organize, promote, encourage and participate in a riot, 18 U.S.C. § 2101, and for obstructing, impeding and interfering with a law enforcement officer during the commission of a civil disorder, 18 U.S.C. § 231(a) (3).

Specifically, Count I of that two count indictment charges that on or about April 29, 1971 Hoffman did travel in interstate commerce from outside the District of Columbia to the District of Columbia with intent to organize, promote, encourage, participate in and carry on a riot and he thereafter on or about May 3, 1971, in the District of Columbia participated in a riot, to wit, Hoffman, being a part of an assemblage of more than three persons, erected a barricade in a public thoroughfare for the purpose of organizing, promoting, encouraging, participating in and carrying on a riot (§ 2101). Count II charges that on or about May 3, 1971, within the District of Columbia, Hoffman did commit and attempt to commit an act to obstruct, impede and interfere with a member of the Metropolitan Police Department, Washington, D. C., then lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder, which disorder obstructed, delayed and adversely affected commerce, etc., and the conduct and performance of a federally protected function.

On June 30, 1971 the defendant filed a motion to dismiss the indictment for the unconstitutionality of 18 U.S.C. §§ 2101 and 231(a) (3), setting forth examples of legislative history and hypothetical situations which defendant contends would result in unconstitutional applications of those criminal provisions.

In consideration of defendant's motion, points and authorities in support thereof, the government's opposition to that motion, and particularly the cases of Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969); United States v. Matthews, 136 U.S.App.D.C. 196, 419 F.2d 1177 (1969); National Mobilization Committee to End the War in Viet Nam v. Foran, 411 F.2d 934 (7th Cir. 1969); and In re Shead, 302 F.Supp. 560 (N.D.Cal.1969), aff'd, Carter v. United States, 417 F.2d 384 (9th Cir. 1969), the Court concludes that 18 U.S.C. §§ 2101 and 231(a) (3) are not violative of constitutional guarantees of free speech and assembly nor are they unconstitutional exercises of the commerce power. The Court also concludes that 18 U.S.C. § 2101 does not violate the right of freedom to travel throughout the Union; that § 2101, when viewed with the indictment in this case, does not violate due process by authorizing conviction where the unlawful intent and the prohibited act do not coincide, nor is it an attempt to perpetuate the status of inferiority imposed upon blacks by the system of slavery.

Accordingly, it is this 23rd day of November 1971

Ordered that the defendant's motion to dismiss the indictment for unconstitutionality of 18 U.S.C. §§ 2101 and 231(a) (3) be and it hereby is denied.