May 29, 1979

## 79-39   MEMORANDUM OPINION FOR THE DIRECTOR, FEDERAL BUREAU OF INVESTIGATION

### Foreign Intelligence Surveillance Act (50 U.S.C. § 1801)—Interception of Radio Communication— Constitutional Law—Fourth Amendment—Privacy

You have asked this Office to consider whether, in specified circumstances, the Federal Bureau of Investigation (FBI) interception of radio transmissions[1] would constitute "electronic surveillance" as that term is defined by § 101(f) of the Foreign Intelligence Surveillance Act of 1978 (FISA), Pub. L. No. 95–511, 92 Stat. 1785, 50 U.S.C. § 1801(f). We conclude, for reasons discussed below, that the interception of such transmissions is not "electronic surveillance" and does not require a warrant when conducted to gather foreign intelligence information.

### I. Statutory Interpretation

As analyzed below, whether the interception of radio transmissions is "electronic surveillance" under FISA turns, in general, on whether the speaker has a constitutionally protected reasonable expectation of privacy with respect to his communications.

Under FISA, the interception of radio communications could potentially be classed as "electronic surveillance" under either of two subsections of § 101(f). Section 101(f) provides:

"Electronic surveillance" means—

(1) the acquisition by an electronic, mechanical, or other surveillance device of the contents of any wire or radio

---

[1] References in this memorandum to "radio communications" include only two-way communications wholly between radio stations or one-way communications between a transmitter and a receiver, and not microwave or other radio communications that rely, in part, on wire, cable, or similar transmissions.

communications sent by or intended to be received by a particular, known United States person who is in the United States, if the contents are acquired by intentionally targeting that United States person, under circumstances in which a person has a reasonable expectation of privacy and a warrant would be required for law enforcement purposes;

* * * * * * *

(3) the intentional acquisition by an electronic, mechanical, or other surveillance device of the contents of any radio communication, under circumstances in which a person has a reasonable expectation of privacy and a warrant would be required for law enforcement purposes, and if both the sender and all intended recipients are located within the United States; * * *.

The interception of the communications involved would typically fall within one of these subsections unless the person targeted, or whose communications were intercepted, had no "reasonable expectation of privacy." Congress meant to incorporate into FISA the standard for constitutionally protected privacy interests that is set forth in *Katz* v. *United States,* 389 U.S. 347 (1967). *Katz* held that the warrantless electronic surveillance of a telephone conversation initiated in a public telephone booth was unconstitutional because it "violated the privacy on which [the speaker] justifiably relied." *Id.* at 353. The Court found that the speaker "justifiably" relied on the privacy of his conversation because of both an objectively reasonable social expectation that people's phone conversations will be private and the speaker's own efforts to keep the world outside the phone booth from hearing his conversation. Congress did not specify in the language of FISA whether it meant to protect only such socially accepted, actively sought conditions of privacy or whether it intended to adopt a broader privacy concept. Both the House and the Senate, however, in reporting the bills that became FISA, said:

The * * * definitions of "electronic surveillance" require that the acquisition of information be under circumstances in which a person has a *constitutionally* protected right of privacy. [H. Rept. 1283, Pt. I, 95th Cong., 2d sess. 53 (1978); S. Rept. 701, *id.,* at 37 (1978).]

Nothing in the Act or in the legislative history contradicts these statements that the privacy standard in FISA is the same as the Fourth Amendment standard.

The second factor determining whether an interception of radio communications constitutes "electronic surveillance" under FISA is whether "a warrant would be required for law enforcement purposes." Under the relevant statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.*, a warrant is required for the

interception, for law enforcement purposes, of radio communications only if the person speaking has a constitutionally protected reasonable expectation of privacy. This conclusion follows from the definitional sections of title III. The communications covered by title III are divided into two categories, "wire" and "oral." A "wire communication" is:

> * * * any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of interstate or foreign communications * * *. [18 U.S.C. § 2510(1).]

An "oral communication" is:

> * * * any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation * * *. [18 U.S.C. § 2510(2).]

It is evident that, although radio transceivers use wires, a normal radio communication does not fall within the definition of "wire communications," which includes only those communications that are transmitted, in whole or in part, over the wire or cable facilities of a communications common carrier. An ordinary radio communication, on its face, is more directly analogous to an oral utterance, whose audible reach is extended through the open air mechanically through a device such as a megaphone. The Ninth Circuit Court of Appeals has held that radio communications, if covered at all by title III, are covered as "oral communications" as defined in that Act. *United States* v. *Hall,* 488 F. (2d) 193, 196–197 (9th Cir. 1973).

However, as indicated in the definition quoted above, title III requires a warrant to intercept oral communications only when uttered by persons possessing a justifiable expectation of privacy. 18 U.S.C. § 2510(2). Title III, like FISA, thus incorporates the constitutional privacy standard first set forth in *Katz.*[2] If, in particular circumstances, no justifiable expectation of privacy requiring a warrant for law enforcement purposes under the Fourth Amendment exists, title III imposes no warrant requirement for the interception of oral communications.

Because "electronic surveillance" of radio communications is defined under FISA to include only circumstances in which a constitutionally protected privacy interest exists, and because a warrant for law enforcement purposes would be required under title III or under the Constitution only where there is a constitutionally protected privacy interest, the

---

[2] "In the course of the opinion [*Berger* v. *New York,* 388 U.S. 41 (1967)], the Court delineated the Constitutional criteria that electronic surveillance legislation should contain. Title III was drafted to meet these standards and to conform with *Katz* v. *United States,* 389 U.S. 347 (1967)." S. Rept. 1097, 90th Cong., 2d sess., 66 (1968). *See also, id.* at 28, 89–90.

existence of such an interest controls both definitional characteristics of "electronic surveillance" under FISA.

## II. Expectations of Privacy and Radio Transmissions

Having concluded that the interpretation of "electronic surveillance" under FISA turns, in this instance, on a determination whether persons using radio have a constitutionally protected expectation of privacy, it is necessary to ascertain whether any such interest exists.

In *Katz,* the Supreme Court held that the Fourth Amendment protected not particular places, but certain privacy interests of persons:

> What a person knowingly exposes to the public, even in his home or office, is not a subject of Fourth Amendment protection * * *. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. [*Id.* at 351–2 (citations omitted).]

From this foundational statement, courts have deduced that the reasonableness of an expectation of privacy is to be judged by those factors affecting the person's subjective expectations, and by "understandings that are recognized and permitted by society" concerning privacy. *Rakas* v. *Illinois,* 99 S. Ct. 421, 430–431, n. 12 (1978). As explained below, we conclude from a review of such factors that no constitutionally protected expectation of privacy exists with respect to most radio communications.

First, a person using an ordinary radio is knowingly exposing the message transmitted to any member of the public who happens to be listening. The ease of interception, the widespread availability of the technology required for interception, and the ease of access for the user to more private means of communication all suggest that no subjective reliance on a privacy interest occurs in the case of a radio message.

The fact that a specific interception that actually takes place may not have been anticipated does not mean there is a constitutionally protected privacy interest. Case law clearly demonstrates that once a person exposes an otherwise private event to ready observation, the individual cannot legitimately rely on an expectation of privacy created by the possibility that the public will overlook what has been exposed. *See, e.g., United States* v. *Jackson,* 448 F. (2d) 963, 971 (9th Cir. 1971), cert. denied, 405 U.S. 924 (1972) (upholding the warrantless search of a trash can outside a hotel room); *United States* v. *Fisch,* 474 F. (2d) 1071 (9th Cir. 1973), cert. denied, 412 U.S. 921 (1973), and *United States* v. *Llanes,* 398 F. (2d) 880 (2d Cir. 1968), cert. denied, 393 U.S. 1032 (1969) (upholding warrantless eavesdropping, with the naked ear, of a conversation in an adjoining motel room or apartment); and *United States* v. *Wright,* 449 F. (2d) 1355 (D.C. Cir. 1971), cert. denied, 405 U.S. 947 (1972) (upholding warrantless visual search of a garage, using a flashlight, through partially open garage door).

The circumstances surrounding radio transmissions and analogies from

243

existing case law support the conclusion that a person transmitting a message by radio cannot reasonably rely on an expectation of privacy in the constitutional sense.[3] Nor does it appear that there are, with respect to radio, any "understandings recognized and permitted by society," *Rakas* v. *Illinois,* 99 S. Ct. 421, 430-31, n. 12 (1978), that create a constitutionally protected privacy interest.

It might be argued that § 605 of the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605, creates a right of privacy that gives rise to a constitutionally protected expectation of privacy. Section 605 provides in part:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.

Prior to its amendment in 1968, this provision referred to "any" communication "by wire or radio," and was interpreted by the Supreme Court to preclude the introduction into evidence of intercepted wire communications at a State or Federal trial. *Nardone* v. *United States,* 302 U.S. 379 (1937); *Lee* v. *Florida,* 392 U.S. 378 (1968). Reasoning from *Nardone,* the Ninth Circuit, in *United States* v. *Sugden,* 226 F. (2d) 281 (9th Cir. 1955), *aff'd per curiam,* 351 U.S. 916 (1956), held the exclusionary rule applicable to radio communications as well.

We conclude, however, that the prohibitions enacted in § 605 do not codify or create a constitutionally protected privacy interest for radio communications. First, those lower courts that ruled on the question prior to FISA held that § 605 does not bar warrantless electronic surveillance for the purpose of gathering foreign intelligence information, even from wire communications. *United States* v. *Butenko,* 494 F. (2d) 593, 602 (3d Cir. 1974), cert. denied, 419 U.S. 881 (1974); *United States* v. *Clay,* 430 F. (2d) 165, 171 (5th Cir. 1970), *rev'd on other grounds,* 403 U.S. 698 (1971); *United States* v. *Hoffman,* 334 F. Supp. 504 (D.D.C. 1971). In adopting FISA, Congress provided expressly that § 605 is not a bar to "electronic surveillance" conducted under the Act, or to the acquisition of foreign intelligence information by means other than electronic surveillance from international or foreign communications. FISA, § 201(b), 18 U.S.C. § 2511(2)(e) and (f). In view of the prior case law and because Congress

---

[3] The fact that a transmission may be encoded would also not create a constitutionally protected privacy interest. With respect to communications, the Fourth Amendment protects persons against interceptions that cannot be reasonably anticipated, given the steps taken to protect the privacy of the communication. In circumstances in which the Fourth Amendment would not proscribe a particular recipient from *receiving* a communication, the recipient's *use* of the communication, *e.g.,* decoding, divulgence to a third party, etc., is not a matter of constitutional concern. *Hoffa* v. *United States,* 385 U.S. 293, 300-303 (1966); *United States* v. *Crowell,* 586 F. (2d) 1020 (4th Cir. 1978), cert. denied, 99 S.Ct. 1500 (1979) (permitting police to take and subject to chemical analysis defendant's trash "absent proof that [defendant] has made some special arrangement for the disposition of his trash inviolate").

stated expressly that § 605 does not bar domestic "electronic surveillance," which, by definition, occurs only when a constitutional privacy interest is at stake, it should follow that § 605 does not bar the acquisition of foreign intelligence information in cases in which a constitutionally protected privacy interest is not at stake. Assuming that § 605 is thus simply irrelevant to the gathering of foreign intelligence information, a person transmitting an ordinary radio message cannot justifiably rely on § 605 as protecting his privacy against investigators seeking such information.

Second, the Department of Justice has consistently interpreted § 605 not to bar the mere acquisition of radio communications, but only to proscribe their interception and divulgence outside the Government, *see* H. Rept. 1283, Pt. 1, 95th Cong., 2d sess. 15 (1978), and a person using radio could thus not rely on § 605 as guaranteeing privacy against mere interception.[4]

### III. Conclusion

We conclude that no constitutionally protected privacy interest exists with respect to ordinary radio transmissions and, consequently, that no warrant is required for the interception of most radio communications for law enforcement purposes. Because there is thus, with respect to such communications, neither a "reasonable expectation of privacy" nor a warrant requirement for law enforcement purposes, the interception of radio communications does not constitute "electronic surveillance" within the definitional provisions of FISA.

KENNETH C. BASS, III
*Counsel for Intelligence Policy*
*Office of Legal Counsel*

---

[4] Our interpretation is consistent with *United States* v. *Hall,* 488 F. (2d) 193 (9th Cir. 1973), in which the court held that no constitutional right of privacy attaches to radio communications in a case in which the speaker recognizes the possibility of interception. The court regarded the 1968 revision of § 605 as exempting law enforcement officers from its coverage, and thus found § 605's ban on divulgence irrelevant to the introduction into evidence at trial of the contents of intercepted radio communications. Judge Ferguson dissented on the ground that § 605 did apply to law enforcement officers, and did proscribe the use of intercepted conversations at trial. He took no exception, however, to the majority's assumption that § 605 was irrelevant to the question whether a constitutional right of privacy attaches to radio-to-radio communications.